PAUL J. FISHMAN
United States Attorney
ANTHONY J. LaBRUNA
Assistant United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
Tel.: 973-645-2926
Fax: 973-297-2010
email: anthony.labruna@usdoj.gov

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.*, ANDRE PETRAS,<br><br>　　　　　*Plaintiffs,*<br><br>　　v.<br><br>SIMPAREL, INC., *et al.*,<br><br>　　　　　*Defendants.* | HON.  FREDA L. WOLFSON<br><br>*Civil Action No.* 13-2415 (FLW)<br><br>UNITED STATES' STATEMENT OF INTEREST REGARDING DEFENDANTS' MOTIONS TO DISMISS |

# <u>TABLE OF CONTENTS</u>

Introduction ............................................................................................................1

Argument................................................................................................................3

I. The reverse false claims provision (31 U.S.C. § 3729(a)(1)(G)) does not require that the false statements be presented to the government..........................................4

   A.  The reverse false claims provision does not require a false statement ............4

   B.  Under the false statement prong of the reverse false clam provision, the false statement need not actually be presented to the government .........................5

II. A person can be liable under the reverse false claims provision even if that person was not the one who owed the obligation to the Government.......................8

III. A knowing violation of a contractual duty can, when material to payment, lead to liability under the FCA ...................................................................................11

IV. The reverse false claims provision encompasses contingent obligations..........15

Conclusion ...........................................................................................................17

Certificate of Service ...........................................................................................18

## TABLE OF AUTHORITIES

**Cases**

*Allison Engine Co. v. United States ex rel. Sanders*,
  553 U.S. 662 (2008) ..................................................................10

*Am. Textile Mfg's Inst. v. The Limited, Inc.*,
  190 F.3d 729 (6th Cir. 1999) .....................................................13

*Avco Corp. v. U.S. Dep't of Justice*,
  884 F.2d 621 (D.C. Cir. 1989)......................................................2

*Camreta v. Greene*,
  131 S. Ct. 2020 (2011).................................................................7

*Cook County v. United States ex rel. Chandler*,
  538 U.S. 119 (2003) ....................................................................3

*Hoyte v. Am. Nat'l Red Cross*,
  439 F. Supp. 2d 38 (D.D.C. 2006)...............................................9

*Hoyte v. Am. Nat'l Red Cross*,
  518 F.3d 61 (D.C. Cir. 2008) .....................................................13

*Scott v. E.I. du Pont de Nemours & Co.*,
  2014 U.S. Dist. Lexis 58958 (M.D. La. Apr. 29, 2014)...............5

*United States v. Bornstein*,
  423 U.S. 303 (1976) ..................................................................12

*United States v. Bourseau*,
  531 F.3d 1159 (9th Cir. 2008) ...............................................6, 14

*United States v. Caremark, Inc.*,
  634 F.3d 808 (5th Cir. 2011) .......................................................8

*United States v. Merck-Medco Managed Care, L.L.C.*,
  336 F. Supp. 2d 430 (E.D. Pa. 2004) ..........................................9

*United States v. Neifert-White Co.*
  390 U.S. 228 (1968) ....................................................................3

*United States v. Pemco Aeroplex, Inc.*,
  195 F.3d 1234 (11th Cir. 1999) ............................................11, 13

*United States v. Q Int'l Courier, Inc.*,
  131 F.3d 770 (8th Cir. 1997).................................................13-14

*United States v. Sci. Applications Int'l Corp.*,
  626 F.3d 1257 (D.C. Cir. 2010)..................................................12

*United States ex rel. Bahrani v. Conagra, Inc.*,
465 F.3d 1189 (10th Cir. 2006) ...................................................................9

*United States ex rel. Eisenstein v. City of New York*,
556 U.S. 928 (2009) ...................................................................................2

*United States ex rel. Frascella v. Oracle Corp.*,
751 F. Supp. 2d 42 (E.D. Va. 2010) .........................................................12

*United States ex rel. Koch v. Koch Indus.*,
1999 U.S. Dist. Lexis 16597 (N.D. Okla. Aug. 6, 1999) ........................... 6-7

*United States ex rel. Lamers v. City of Green Bay*,
168 F.3d 1013 (7th Cir. 1999) ...................................................................14

*United States ex rel. Landis v. Tailwind Sports Corp.*,
2014 U.S. Dist. Lexis 83313 (D.D.C. June 19, 2014) ......................8, 13, 16

*United States ex rel. Matheny v. Medco Health Solutions, Inc.*,
671 F.3d 1217 (11th Cir. 2012) .............................................................6, 11

*United States ex rel. Mustafa v. Najjar*,
2012 U.S. Dist. Lexis 7463 (M.D. Fla. Jan 23, 2012)..................................9

*United States ex rel. Portilla v. Riverview Post Acute Care Ctr.*,
2014 U.S. Dist. Lexis 44002 (D.N.J. Mar. 31, 2014)...................................7

*United States ex rel. Quinn v. Omnicare, Inc.*,
382 F.3d 432 (3d Cir. 2004) ........................................................................3

*United States ex rel. Shaw v. AAA Eng'g & Drafting, Inc.*,
213 F.3d 519 (10th Cir. 2000) ............................................................. 11-12

*United States ex rel. Stevens v. Ashland, Inc.*,
No. C-1-93-442 (S.D. Ohio Oct. 4, 1996) ...................................................6

*United States ex rel. Stone v. OmniCare, Inc.*,
2011 U.S. Dist. Lexis 73123 (N.D. Ill. July 7, 2011)...................................4

*United States ex rel. Winkler v. BAE Sys.*,
957 F. Supp. 2d 856 (E.D. Mich. 2013) ......................................................6

*United States ex rel. Yannacopolous v. General Dynamics*,
652 F.3d 818 (7th Cir. 2011) ............................................................ 12, 14-15

*Zelenka v. NFI Indus., Inc.*,
436 F. Supp. 2d 701(D.N.J. 2006).............................................................13

**<u>Statutes</u>**

28 U.S.C. § 517.......................................................................... 1-2

31 U.S.C. § 3729(a)(1)(G)........................................................*passim*

31 U.S.C. § 3729(b)(3) .............................................................*passim*

Fraud Enforcement and Recovery Act of 2009,
Pub. L. 111-21, 123 Stat. 1617 .......................................................3

**<u>Congressional Reports</u>**

H.R. Rep. No. 660, 99th Cong., 2d Sess. (1986)................................3

S. Rep. No. 99-345, 99th Cong., 2d Sess. (1986)....................10, 12

S. Rep. No. 111-10, 111th Cong., 1st Sess. (2009)................ 15-16

**<u>Publications</u>**

JOHN T. BOESE, CIVIL FALSE CLAIMS AND
*QUI TAM* ACTIONS (4th ed. 2013) .................................................6

The United States respectfully submits this Statement of Interest pursuant to the False Claims Act (FCA), 31 U.S.C. §§ 3729-3733, and 28 U.S.C. § 517, to address several erroneous arguments made by the Defendants that could adversely affect the United States' ability to enforce the FCA.  Relator Andres Petras brought this *qui tam* action under the FCA to recover penalties and damages arising from the allegations set forth in his complaint.  The United States declined to intervene in the action and the Relator elected to proceed with the litigation.  *See* 31 U.S.C. § 3730(b)(4).  All defendants have now moved to dismiss the Relator's complaint, based, in part, by relying on flawed and outdated arguments and case law under the FCA.  Specifically, the Defendants have incorrectly argued that, under 31 U.S.C. § 3729(a)(1)(G), commonly known as the "reverse false claims" provision of the FCA, (1) a false record must actually be presented to the government, (2) that the defendant itself must owe the obligation to pay the government, (3) that the obligation to pay the government cannot be contingent, and (4) that a knowing violation of a contractual duty, even where material to payment, cannot form the basis of FCA liability.  The Defendants in this case seem to have failed to recognize that Congress amended the FCA in 2009, and that these amendments supersede much of the case law cited by the Defendants, which either pre-date the

amendments or apply the old version of the statute.[1]  Accordingly, the United

States submits this brief to address these flawed statements of law.  Note, however,

that the United States is specifically *not* taking a position on the application of the

Relator's allegations to the law, nor on the ultimate disposition of the motions to

dismiss.

The FCA is the "government's primary litigative tool for the recovery of

losses sustained as the result of fraud against the government." *Avco Corp. v. U.S.

Dep't of Justice*, 884 F.2d 621, 622 (D.C. Cir. 1989).  The government, therefore,

has a significant interest in how decisions by the courts, even in declined actions,

may shape future enforcement of the statute.  Moreover, although the United States

has declined to intervene in this case, it remains the real party in interest.  *United

States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 934 (2009).

Accordingly, the United States files this brief to ensure that the Court is apprised of

the applicable law and case authority.  *See* 28 U.S.C. § 517 (providing for

Department of Justice participating in any federal court litigation to attend to the

interests of the United States).

---

1.     Indeed, Simparel's lack of awareness of this change is made
particularly obvious by the fact that its brief cites to the correct portion of the
statute as amended, but then quotes the old version of the statute.  Simparel Br.,
doc. no. 23-2, at 2 (ECF p. 9).

## ARGUMENT

The FCA is "the primary vehicle by the Government for recouping losses suffered through fraud."  H.R. Rep. No. 660, 99th Cong., 2d Sess. 18 (1986).  As the Supreme Court has explained, by enacting the FCA, "Congress wrote expansively, meaning 'to reach all types of fraud, without qualification, that might result in financial loss to the Government.'"  *Cook County v. United States ex rel. Chandler*, 538 U.S. 119, 129 (2003) (quoting *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968)).  *See also United States ex rel. Quinn v. Omnicare, Inc.*, 382 F.3d 432, 439 (3d Cir. 2004) ("FCA aims to impose liability for a broad range of conduct").  As relevant here, the FCA prohibits any person from knowingly making, using, or causing to be made or used a false record or statement material to an obligation to pay the government, or knowingly concealing, avoiding, or decreasing an obligation to pay or transmit money to the Government.  31 U.S.C. § 3729(a)(1)(G).[2]

---

2.      On May 20, 2009, the Fraud Enforcement and Recovery Act of 2009 ("FERA") was signed into law, amending the FCA, including 31 U.S.C. § 3729(a)(1)(G) (formerly § 3729(a)(7)).  Pub. L. 111-21, 123 Stat. 1617.  The alleged conduct at issue in the Relator's First Amended Complaint (doc. no. 18) appears to post-date the effective date of FERA.

I.  **The reverse false claims provision (31 U.S.C. § 3729(a)(1)(G)) does not require that the false statements be presented to the government.**

   A.  **The reverse false claims provision does not require a false statement.**

Defendants Simparel, Roth, and Grilli (hereafter "Simparel") argue in their memorandum in support of their motion to dismiss, doc. no. 23-3, that under the "reverse false claims provision," 31 U.S.C. § 3729(a)(1)(G),  the defendants must present a false statement to the government.   Simparel Br. at 17-18.  Yet, Congress amended the reverse false claims provision in 2009, *see* footnote 2, *supra* page, 3, to impose liability on defendants for their improper conduct in certain circumstances even absent the use of any false statement.  Under the amended provision, a defendant is liable if that defendant "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, **_or_** knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government."  31 U.S.C. § 3729(a)(1)(G) (emphasis added).  Accordingly, liability may also be imposed where the defendant knowingly engages in conduct to improperly avoid or decrease such an obligation. *See, e.g., United States ex rel. Stone v. OmniCare, Inc.*, No. 09-c-4319, 2011 U.S. Dist. Lexis 73123, at *12 (N.D. Ill. July 7, 2011) (holding that defendant's knowing retention of overpayments violates amended reverse false claims

-4-

provision, but dismissing count because conduct took place prior to the effective date of the FCA amendments).  Thus, under this prong of Section 3729(a)(1)(G), a false statement is not required.  For example, in *Scott v. E.I. du Pont de Nemours & Co.*, No. 13-741, 2014 U.S. Dist. Lexis 58958, at *6-7 (M.D. La. Apr. 29, 2014), the court held that a defendant could be liable under the reverse false claims provision where it failed to make required reports to the Environmental Protection Agency in an effort to avoid the imposition of mandatory fines; the allegations did not include the use of a false statement.  Thus, contrary to Simparel's arguments that the provision requires the submission of a false statement to the government, Simparel Br. at 17-18, the amended reverse false claims provision supports liability in the absence of such a statement at all.  The Defendants' brief ignores this prong of the revised provision, and instead relies on cases that pre-date the FERA amendments (or cases that apply the old version of the statute).

**B.     Under the false statement prong of the reverse false claim provision, the false statement need not actually be presented to the government.**

Even under the first prong of the reverse false claim provision, Simparel incorrectly argues that liability can be imposed only where the defendant actually presented the false statement to the government.   Simparel Br. at 17-18.  This argument is unsupported by the statute and the case law.  The reverse false claims provision imposes liability on a defendant if it "knowingly makes, uses, or causes

to be made or used, a false record or statement material to an obligation to pay or

transmit money or property to the Government . . . ."  Thus, under the first part of

the provision, liability is imposed for the making of or using (or causing the same)

a false statement material to an obligation to pay or transmit money.  Nothing in

the text of the statute requires that the statement be presented to the government.

"[F]or a reverse false claims action, presentment of a false claim is not at issue and

presentment of a false statement is not required by the statute and thus, does not

need to be pled."  *United States ex rel. Matheny v. Medco Health Solutions*, *Inc.*,

671 F.3d 1217, 1224 n.12 (11th Cir. 2012).  *See also United States v. Bourseau*,

531 F.3d 1159, 1169 (9th Cir. 2008) ("Presentment is not an element in a cause of

action under" the reverse false claims provision); *United States ex rel. Winkler v.

BAE Sys.*, 957 F. Supp. 2d 856, 874 (E.D. Mich. 2013) (noting that "presentment"

is not required under the reverse false claims provision).[3]  In *United States ex rel.

Koch v. Koch Indus.* No. 91-cv-763, 1999 U.S. Dist. Lexis 16597, at *5-6 (N.D.

Okla. Aug. 6, 1999), for example, the relator asserted reverse false claims

---

3.       Simparel also purports to quote jury instructions from an FCA treatise.  Simparel Br. at 16-17, *quoting* 2 JOHN T. BOESE, CIVIL FALSE CLAIMS AND *QUI TAM* ACTIONS, App. F at F-34 (4th ed. 2013).  However, the treatise indicates that the jury instructions were taken from instructions proposed by a defendant in a case from 1996, well before Congress amended the FCA in 2009.  *Id.* at F-33 (citing defendant's proposed instructions in *United States ex rel. Stevens v. Ashland, Inc.*, No. C-1-93-442 (S.D. Ohio Oct. 4, 1996)).  Nor is there any indication that the court adopted those instructions, even in that case.

allegations against a defendant that contracted to pay for oil under a lease with the government.  Under the lease, the defendant was required to measure the oil taken to determine how much it owed.  *Id.* at *5.  The relator alleged that the defendant created false readings in an effort to avoid paying the government for the full amount of gas taken.  *Id.* at *6.  Although these readings were not submitted directly to the government, it formed the basis for which the defendant underpaid for the gas; accordingly, the court found that FCA liability extended under these circumstances.  *Id.* at *13-16.

In support of its argument, Simparel cites to *United States ex rel. Portilla v. Riverview Post Acute Care Ctr.*, No. 12-1842, 2014 U.S. Dist. Lexis 44002 (D.N.J. Mar. 31, 2014).  Simparel Br. at 20.  In *Portilla*, the Court did not hold that the false statement must be presented to the government.  Rather, the Court dismissed the count because the complaint did not properly allege that the false statements "were ever made, or that [the statements] inferentially affected" payment, *i.e.*, that they were material to payment.  *Id.* at *44-45.[4]

---

4.      Further, the United States had declined to intervene in this case, and did not file a statement of interest in response to the motion to dismiss.  Even if the Court's opinion could be read as requiring presentment, the isolated holding would be against the great weight of authority and the text of the statute, as noted above. The opinion is not binding in this case. *Camreta v. Greene*, __ U.S. __, 131 S. Ct. 2020, 2033 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even the same judge in a different case.") (internal quotations and citations omitted).

II.   **A person can be liable under the reverse false claims provision even if that person was not the one who owed the obligation to the Government.**

Simparel, as well as defendants Log Logistics and MontERP Enterprises, argue that they cannot be liable under the reverse false claims provision because they were not the ones that owed an obligation to the government.  Simparel Br. at 21-22; Log Logistics/MontERP Br., doc. no. 26-4, at 5.  The reverse false claims provision, however, does not require the defendant to have been in direct privity with the Government.  Rather, the statute states that a person is liable if that person knowingly makes or uses (or causes to be made or used) a false statement to avoid "an obligation" to pay the Government, or knowingly conceals, avoids, or decreases "an obligation" to pay the government.  31 U.S.C. § 3729(a)(1)(G).  The statute therefore imposes liability regardless of whether it is the defendant or a third party who has an obligation to pay.  *See United States v. Caremark, Inc.*, 634 F.3d 808, 817 (5th Cir. 2011) ("The statue does not require that the statement impair the *defendant's* obligation; instead, it requires that the defendant impair '*an* obligation to pay or transmit money or property to the Government.'") (collecting cases) (emphasis in original); *United States ex rel. Landis v. Tailwind Sports Corp.*, No. 10-cv-96, 2014 U.S. Dist. Lexis 83313, at *120 (D.D.C. June 19, 2014) (agreeing with the holding of *Caremark* that the statute requires only that defendant "knowingly makes, uses, or causes to be made or used, a false record or

-8-

statement to conceal, avoid, or decrease **an** obligation to pay or transmit money or property to the government") (internal quotations omitted) (emphasis in original); *United States ex rel. Mustafa v. Najjar*, No. 6:10-cv-414, 2012 U.S. Dist. Lexis 7463, at *12 (M.D. Fla. Jan. 23, 2012) (denying motion to dismiss reverse false claims count against individual alleged to have submitted false statements to conceal co-defendant's obligation to repay government).  *See also United States v. Merck-Medco Managed Care, L.L.C.*, 336 F. Supp. 2d 430, 444-45 (E.D. Pa. 2004) (holding that there is no "direct privity" requirement and that the defendant could not escape liability for having caused another party to avoid making payments to the government).  Thus, it is enough that the defendant made or used false statements (or caused to be made or used false statements) material to a third-party's obligation to pay the government, or knowingly concealed, avoided, or decreased a third-party's obligation.

Simparel's unduly narrow reading of the reverse false claim provision is also contrary to Congress' clear purpose in enacting this provision.  Congress intended the reverse false claim provision to be equal but opposite in scope to the FCA's affirmative false statement provision.  *See Hoyte v. Am. Nat'l Red Cross*, 439 F. Supp. 2d 38, 43 (D.D.C. 2006), *aff'd*, 518 F.3d 61 (D.C. Cir. 2008); *United States ex rel. Bahrani v. Conagra, Inc.*, 465 F.3d 1189, 1194 (10th Cir. 2006) ("an individual who makes a material misrepresentation to avoid paying money owed to

the Government would be equally liable under the Act as if he had submitted a false claim to receive money.") (quoting S. Rep. No. 99-345 at 18, *reprinted* in 1986 U.S.C.C.A.N. 5266, 5283).  Under the latter provision, a defendant may be liable for making a false statement in order to induce the Government into conferring a benefit on a third party.  *See, e.g., Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 671-72 (2008) (holding that a subcontractor could be liable under former Section 3729(a)(2) if the subcontractor submitted a false statement to the prime contractor to enable the latter to get paid).  That Section 3729(a)(1)(G), like Section 3729(a)(1)(B) (formerly Section 3729(a)(2)), expressly imposes liability for *causing* a third party to make a false statement underscores Congress' intention  to hold defendants similarly responsible for concealing obligations owed by third parties to the Government.

Finally, there is no logical reason why Congress would have wanted to exclude from liability those who are not in direct privity with the Government. Certainly, a party may receive a benefit from the Government's erroneous payment to a third party, and thus may have a strong incentive to conceal the wrongful payment.

Defendants cite two Eleventh Circuit cases in support of their argument. Log Logistics/MontERP Br., doc. no. 26-4, at 5.  In each of those cases, however, the complaint alleged that the defendants themselves owed the duty to repay the

government, and therefore the potential liability of a defendant for concealing the obligation of a third-party was not at issue and was not considered by the courts. *U.S. ex rel. Matheny v. Medco Health Solutions*, 671 F.3d 1217, 1220 (11th Cir. 2012) (all defendants signed corporate integrity agreement); *United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1235 (11th Cir. 1999) (Pemco, the sole defendant, signed the contract with the government).  Indeed, in *Medco*, the defendants "[did] not challenge the existence of an obligation."  *Medco*, 671 F.3d at 1223.

### III.   A knowing violation of a contractual duty can, when material to payment, lead to liability under the FCA.

Simparel also incorrectly argues that FCA liability cannot be premised on a violation of a contractual duty.  Simparel Br. at 25-27.  Yet, the FCA defines the term "obligation," for purposes of the reverse false claims provision, as "an established duty, whether or not fixed, arising from an express or implied contractual . . . relationship . . . ."  31 U.S.C. § 3729(b)(3).  Simparel's brief wholly ignores this definition of "obligation" and the clear statutory reference to express and implied contracts.

Indeed, one of the most common forms of FCA liability arises from a contractor's knowing "claim for goods or services . . . provided in violation of contract terms."  *United States ex rel. Shaw v. AAA Eng'g & Drafting, Inc.*, 213

F.3d 519, 531 (10th Cir. 2000) (quoting the legislative history of the 1986 amendments to the FCA, S. Rep. No. 99-345 at 9, *reprinted* in 1986 U.S.C.C.A.N. at 5274).  The U.S. Court of Appeals for the District of Columbia likewise addressed this issue in *United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1268 (D.C. Cir. 2010), a case premised on Sections 3729(a)(1)(A)-(B) of the FCA.  The D.C. Circuit correctly recognized the issue as one of materiality and specifically held that "requests for payment can be 'false or fraudulent' under the FCA when submitted by a contractor that has violated contractual requirements material to the government's decision to pay regardless of whether the contract expressly designates those requirements as conditions of payment."  *Id.* at 1261. *See also United States v. Bornstein*, 423 U.S. 303, 312 (1976) (upholding FCA liability based on invoices for product which failed to comply with the specifications of a federal contract); *United States ex rel. Frascella v. Oracle Corp.*, 751 F. Supp. 2d 842, 856 (E.D. Va. 2010) (denying motion to dismiss where complaint alleged that defendant submitted invoices that were inflated because they violated contract pricing terms).  Of course, "a mere breach of contract does not give rise to liability under the False Claims Act."  *United States ex rel. Yannacopolous v. General Dynamics*, 652 F.3d 818, 824 (7th Cir. 2011). To be liable under the FCA, the defendant must have also violated the contractual provision *knowingly*, as that term is defined by the FCA at 31 U.S.C. § 3729(b)(1).

Even before Congress added the definition of "obligation" in 2009, courts routinely held that a contract can create an "obligation" under the reverse false claims provision.  The U.S. District Court for the District of Columbia recently considered this very issue in *United States ex rel. Landis v. Tailwind Sports Corp.*, No. 10-cv-96, 2014 U.S. Dist. Lexis 83313, at *106-108 (D.D.C. June 19, 2014) (applying the pre-FERA version of the FCA).  The court agreed with the Sixth Circuit, which held that an obligation "certainly includes those arising from," *inter alia*, "breaches of government contracts."  *Id.* at *8 (*quoting Am. Textile Mfg's Inst. v. The Limited, Inc.*, 190 F.3d 729, 741 (6th Cir. 1999)).  *See also United States ex rel. Bahrani v. Conagra, Inc.,* 465 F.3d 1189, 1204 (10th Cir. 2006) (quoting this specific holding from *American Textile*); *Hoyte*, 518 F.3d at 73 (Tatel, J., concurring in part and dissenting in part) ("Given that the Red Cross was violating a contract with the government, Hoyte could reasonably have believed the organization was violating the FCA, for courts have universally held that 'a contractual obligation falls within the scope of § 3729(a)(7).'") (quoting *Bahrani*, 465 F.3d at 1204)).  *See also United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1238 (11th Cir. 1999) (holding that a "written contract [] expressly obligated [the defendant] . . . to return [certain] property to the government" and therefore constituted an "obligation" under the reverse false claims provision); *United States v. Q Int'l Courier, Inc.*, 131 F.3d 770, 773 (8th Cir. 1997) (holding that "a

defendant must have had a present duty to pay money or property that was created by . . . contract, judgment, or acknowledgement of indebtedness."); *United States v. Bourseau*, 531 F.3d 1159, 1169 (9th Cir. 2008) (adopting definition of "obligation" in *Am. Textile Mfrs.*).

In support of its argument that a contractual term cannot form the basis of an FCA action, Simparel cites to *United States ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818 (7th Cir. 2011). Simparel Br. at 18. Yet, *Yannacopoulos*, and other cases cited by Simparel, all arose from cases applying the pre-FERA version of the FCA, and therefore prior to Congress' addition of the term "obligation" to the FCA, which expressly includes contracts. To the extent those cases held that violation of a contractual duty could not lead to FCA liability (which they did not), they have been superseded by statute.

Moreover, while the court in *Yannacopoulos* correctly noted that a mere breach of contract does not automatically give rise to FCA liability under § 3729(a)(1)(A) of the statute, "[i]f the breaching party falsely claims to be in compliance with the contract to obtain payment, however, there may be an actionable false claim." *Id.* at 824. Although the court, citing *United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013 (7th Cir. 1999), repeated the shorthand from that case regarding whether differences in a disputed legal interpretation of a contract can lead to FCA liability, the court in *Yannacopoulos* in

-14-

practice determined falsity with respect to the disputed contract terms by using well-established traditional tools of contract interpretation to give a definitive meaning to the disputed terms as a matter of law.  *E.g.*, *id.* at 839-840 (interpreting contract provision using traditional judicial tools of contract interpretation).

## IV.    The reverse false claims provision encompasses contingent obligations.

Equally without merit is Simparel's contention that the reverse false claims provision reaches only a "clear and present duty" to repay the government. Simparel Br. at 23-25.  Congress made its rejection of this position clear when it added a definition of "obligation" to the FCA in 2009, which expressly provides, in relevant part, that this term "means an established duty, *whether or not fixed*."  31 U.S.C. § 3729(b)(3) (emphasis added).  As elucidated by the legislative history, the italicized language was added for the very purpose of clarifying that the concealment of contingent obligations was not immunized from liability under the FCA:

> [W]hile the new definition of "obligation" expressly includes contingent, non-fixed obligations, the Committee supports the position of the Department of Justice that current section 3729(a)(7) "speaks of an 'obligation,' not a 'fixed obligation.'  By including contingent obligations such as, "implied contractual, quasi-contractual, grantor-grantee, licensor-licensee, fee-based, or similar relationship," this new section reflects the Committee's view, held since the passage of the 1986 Amendments, that an "obligation" arises from the spectrum of possibilities from the fixed amount debt obligation where all particulars are defined to the instance where there is a relationship between the Government and a person that "results in

-15-

a duty to pay the Government money, whether or not the amount
owed is yet fixed."

S. Rep. No. 111-10, at 14 (2009).

Moreover, as noted in the previous section, knowing breaches of a

contractual duty can lead to liability under the reverse false claims provision.  This

includes alleged breaches of contracts—the breaches need not first be reduced to a

judgment.  *Tailwind Sports Corp.*, 2014 U.S. Dist. Lexis 83313, at *108-109.

In support of its argument, Simparel cites a number of cases that, once again,

*pre-date* the 2009 FCA amendments.  Simparel Br. at 23-25 (citing, *inter alia*,

*Zelenka v. NFI Indus., Inc.*, 436 F. Supp. 2d 701 (D.N.J. 2006)).  Even assuming

the correctness of these holdings at the time they were rendered (which the

legislative history casts doubt on), such holdings have now been unquestionably

superseded by statute, and Simparel fails to cite a single case post-dating the

amendments to the FCA.  Moreover, *Zelenka* involved the application of the

reverse false claims provision to fines or penalties that could have been sought by

the U.S. Customs and Border Protection Agency as part of a potential enforcement

action; that type of enforcement action is not at issue here.  *Zelenka*, 436 F. Supp.

at 702-703.

## <u>CONCLUSION</u>

Although the United States does not take a position on the ultimate

disposition of the motions, or on the application of the law to the facts of this case,

the United States respectfully submits this Statement of Interest for the Court's

consideration.

Respectfully submitted,

PAUL J. FISHMAN
United States Attorney


By:    s/ Anthony J. LaBruna
ANTHONY J. LaBRUNA
Assistant United States Attorney

Dated: August 4, 2014

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 4, 2014, I filed the foregoing United States' Statement of Interest via the Court's electronic filing system, and that notice of the filing will be automatically sent to all counsel of record.

        <u>  s/ Anthony J. LaBruna        </u>
        ANTHONY J. LaBRUNA

-18-