**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. ANDRE PETRAS | : <br> : <br> : |
|           Plaintiff/Relator, | : <br> :    Civ. Action No. 13-2415 (FLW)(DEA) |
|         v. | : <br> :        **OPINION** |
| SIMPAREL, INC., DAVID ROTH, RON GRILLI, LOG LOGISTICS, and MONTERP ENTERPRISES, | : <br> : <br> : <br> : |
|          Defendants. | : |

**WOLFSON, United States District Judge**

This *qui tam* action is brought by plaintiff/relator Andre Petras ("Petras" or "Plaintiff/Relator"). Presently before the Court are two motions to dismiss, one filed by Simparel, Inc. ("Simparel"), Simparel founder David Roth ("Roth"), and Simparel CEO Ron Grilli ("Grilli") (collectively, "Simparel defendants"), and the other filed by Log Logistics and MontERP Enterprises ("MontERP")[1] (collectively, "non-Simparel defendants") (all five defendants collectively herein referred to as "Defendants"). Plaintiff/Relator asserts the following claims against Defendants under the federal False Claims Act ("FCA"): (1) in Count One, a violation of Section 3729(a)(1)(G) of the FCA ("Section 3729(a)(1)(G)" or "reverse false claim"), against Defendants;[2] (2) in Count Two, a violation of Section 3729(a)(1)(C) of the FCA ("Section 3729(a)(1)(C)" or "conspiracy claim"), against Defendants; (3) in Count Three, a

---

[1] Among other arguments, non-Simparel defendants contend that this Court lacks personal jurisdiction over MontERP. *See* Non-Simparel Defs.' Br.

[2] However, as discussed *supra*, Plaintiff/Relator withdrew his Section 3729(a)(1)(G) claim against non-Simparel defendants in his opposition to non-Simparel defendants' motion to dismiss. Pl.'s Opp. Br. Against Non-Simparel Defs.' Mot. to Dismiss at 13 n.1.

violation of Section 3730(H) of the FCA ("Section 3730(H)" or "whistleblower claim"), against Simparel; (4) in Count Four, a violation of Section 3730(H) against Roth; and (5) in Count Five, a violation of Section 3730(H) against Grilli.

For the reasons set forth below, the Court grants Defendants' motion. Counts Two through Five are dismissed with prejudice. Count One is dismissed without prejudice against Simparel defendants and with prejudice against non-Simparel defendants.

## I.    Background

The following allegations are taken from Petras's Amended Complaint and are assumed as true for the purposes of this motion to dismiss. Simparel is "an apparel manufacturing software solution provider" founded in November 2007 by David Roth.[3] Am. Compl. 12, 15, 38. Andre Petras was Simparel's Chief Financial Officer ("CFO") from December 2007 to November 2012.[4] *Id.* ¶ 10.

L Capital, a private equity firm licensed by the Small Business Administration ("SBA") as a small business investment company ("SBIC"), invested $4,016,000 of SBA-provided funds in Simparel, *Id.* ¶¶ 69, 71. In exchange for its investment, L Capital received Series A Preferred Shares, initially representing 50.1% of shares in Simparel. *Id.* ¶¶ 2, 3. These shares now represent a 37.88% interest in Simparel because L Capital sold some of its shares to Omega in

---

[3] The Amended Complaint describes Simparel's primary asset as its proprietary Enterprise Resource Planning ("ERP") software, a "meta-data driven model" that "is built for the specific needs of the fashion industry and unites all processes on a single, unified platform." *Id.* 17-21.

[4] According to Petras, his duties included reporting financial results to the CEO, Board of Directors, and investors; "all Human Resources, . . . all banking related duties and responsibilities, client relationship for collection, escalated service and installation issues," software development assistance for accounting related topics, and tax preparation. *See id.* 12.

December 2010.[5] *Id.* ¶ 3, 57. L Capital also received two of the three seats on Simparel's board of directors.[6] *Id.* 23. The third seat was and is still held by Ron Grilli, Simparel's Chief Executive Officer ("CEO"). *Id.* ¶ 47.

L Capital failed to comply with the terms and conditions of its SBA funding. *Id.* ¶ 71. According to Peras, as a consequence of SBA's enforcement action against L Capital, the SBA became a stockholder in Simparel by way of being appointed as the receiver to L Capital in April 2012.[7] *Id.* ¶ 72. Petras alleges that Simparel's two board members appointed by L Capital "were asked to remove themselves from the [board] by the SBA in April 2012." *Id.* ¶ 26. Two new board members who were allegedly proposed by Omega, SBA, and Petras, were appointed in January 2013. *Id.* Therefore, according to Petars, from May 2012 to January 2013, Grilli was Simparel's sole board member. *Id.*

After SBA became a shareholder in Simparel, Petras alleges that "Defendants have, and still are[,] conspir[ed] to avoid or decrease Simparel's obligation to the SBA as a minority preferred shareholder by intentionally and knowingly decreasing the value of Simparel and using [Simparel's] intellectual property and assets . . . to their own benefit." *Id.* ¶ 4.

---

[5] However, later in the Amended Complaint Petras alleges that L Capital's shares of stock were reduced "as a result of their selling shares to Kata," an "Israel based investment group" who owns shares of Series B. Preferred Stock. *Id.* 42, 46.

[6] According to Petras, Simparel's articles of incorporation require a 2:1 ratio of "members appointed by the preferred shareholders to common shareholders." *Id.* 23.

[7] Petras attaches various enforcement documents from the SBA to his Amended Complaint. *See id.* Ex. A. Generally, a district court ruling on a motion to dismiss "relies on the complaint, attached exhibits, and matters of public record." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

Specifically, Petras alleges that no board meetings were held in April, July, or October to review Simparel's first, second, and third quarter 2012 results. [8] *Id.* ¶ 74. Further, "no board member candidates were presented, and no financial information was distributed informally to the SBA." *Id.* According to Petras, "the financial condition of the company was deteriorating and the lack of information to the SBA was misleading."[9] *Id.* ¶ 74. In October 2012, Simparel allegedly distributed its financial statements to Omega and Kata but not to Simparel. *Id.* ¶ 76. According to Petras, Roth and Grilli "both instructed [Petras] not to distribute financials to the SBA with the comment, '*if they don't ask, they don't get*,'" despite Petras's misgivings.[10] *Id.*

In 2011, Roth expressed his intention to form a company with a vertical relationship to Simparel, named Log Logistics.[11] Petras alleges that (1) Roth ignored Petras's advice that Grilli needed to inform the board of directors about his intention and allow the board the first right of

---

[8] Petras alleges that Simparel's position has been deteriorating throughout 2012. *Id.* ¶ 37.

[9] Petras also alleges that Grilli misled representatives of Kata and Omega on different occasions. According to Petras, Grilli misled a representative of Kata during a conference call "by stating he was confident he would be able to close $750,000 of license revenue for the Q3 2012 financials. With only 2 weeks remaining in the Q3 2012 Ron Grilli had closed only $10,000 in licensing revenue." *Id.* 75. Further, Grilli also allegedly misled a representative of Omega as to Simparel's third quarter results "by not stating explicitly that the majority of license revenue may not be recognized, as [Simparel was] waiting for a ruling from the auditors." *Id.* ¶ 79.

[10] Petras also alleges that Grill and Roth ignored his financial advice on one occasion by refusing to terminate a contract for services with the company, MontERP, that was losing money and that Grilli rejected his advice on another occasion by pushing to submit financial results "that included . . . a $450,000 favorable misstatement of the results . . . . based on including . . . sales 'contracts' that were highly speculative with significant contingencies." *Id.* 77, 80. However, as to Grilli's advocacy for the submission of allegedly misleading quarterly results, "the revenue was deferred as per [Petras's] opinion and the opinion of [Simparel's] Auditors." *Id.* ¶ 80.

[11] *See AT & T Corp. v. JMC Telecom, LLC*, 470 F.3d 525, 530 (3d Cir. 2006) (explaining that a vertical relationship between two companies encompasses one "between a supplier and distributor," as opposed to a horizontal relationship, "i.e., between two companies on the same level of production").

refusal and (2) Log Logistics is using Simparel's proprietary software, which, according to Petras, places Roth in breach of his employment contract."[12] *Id.* ¶¶ 82-86. Petras bases his latter allegation on his contentions that (1) the company Cometrics, which used to be Simparel's client, now "pays fees to Log Logistics for Simparel Software" but "[n]o fee is paid to Simparel from Log Logistics," and (2) one of Log Logistics's employees is Brian Rivera, who "holds a vast knowledge of [Simparel's] trade secrets and has not signed a Propietary Agreement." *Id.* ¶¶ 84, 86.

Further, Petras alleges that MontERP, a Canadian consulting company formed in August 2011 to provide computer programming services to help develop Simparel's software, is comprised of two former employees of Ballin (a Simparel client). *Id.* ¶ 47. Petras alleges that neither employee has signed a "[P]roprietary [A]greement" and both have "extensive access to the trade secrets of Simparel software technology." *Id.* Petras believes that current MontERP director Roth and former director Grilli, along with Simparel, "used [MontERP's] services to divert technology and assist [sic] away from Simparel." *Id.* ¶ 48.

Petras further alleges that Defendants have a fiduciary duty to Simparel's shareholders and that Defendants have a contractual duty to L Capital, "and now, SBA," pursuant to the "Investor's Rights Agreement"[13] L Capital signed with Simparel on December 12, 2007.[14] *Id.* ¶

---

[12] According to Petras, Roth's employment contract, which Petras attaches to his Amended Complaint, prohibited Roth from "revealing trade secrets and/or not declaring a vertical allowing the board first right of refusal." *Id.* ¶ 86.

   Petras apparently separately alleges that Roth, "in the name of Simparel," signed a non-disclosure agreement with American Software, Inc., whose subsidiary, NGC, is allegedly "a direct competitor of Simparel and that Defendants "have revealed trade secrets which include [Simparel's] financial information," apparently in breach of this agreement. *See id.* ¶ 83.

[13] Petras attaches the "Investor's Rights Agreement" to his Amended Complaint. *See id.* Ex. F.

91. Also, Petras states that Roth and Grilli had an obligation to the United States. *Id.* ¶¶ 101-104.
Finally, Petras alleges that Roth and Grilli have both signed employment agreements that
"place[] duties and obligations to keep trade secrets and proprietary information confidential[]
[and direct them] not to solicit employees or customers."[15] *Id.* ¶ 93.

On April 15, 2013, Plaintiff/Relator filed suit against Defendants.[16] Plaintiff/Relator alleges
the following causes of action under the FCA in his Amended Complaint: (1) in Count One, a
violation of Section 3729(a)(1)(G), the reverse false claims provision, against Defendants; (2) in
Count Two, a violation of Section 3729(a)(1)(C), the conspiracy provision, against Defendants;
and (3) in Counts Three, Four, and Five, a violation of Section 3730(h), the whistleblower
provision, against Simparel, Roth, and Grilli, respectively. On February 10, 2013, the United
States declined to intervene in Planitiff/Relator's action. On June 16, 2013, Simparel, Roth, and
Grilli moved to dismiss Plaintiff/Relator's claims against them. That very day, Log Logistics and
MontERP Enterprises moved to dismiss and for lack of personal jurisdiction. On August 4, 2014,
the United States ("the Government") filed a statement of interest in response to Defendants'

---

[14] Petras quotes the following provisions from the "Investor's Rights Agreement" in his
Amended Complaint: (1) "Information and Observer Rights," which include the delivery of
financial statements to L Capital, (2) "Employee Agreements," which states that Simparel will
cause its employees, its subsidiaries' employees, and its consultants and contractors to "enter
into the Company's standard form of non-disclosure and proprietary rights assignment
agreement and [cause] each Key Employee to enter into a non-competition and non-solicitation
agreement," (3) "Board Matters," which states that "[u]nless otherwise determined by the vote of
a majority of the directors then in office, the Board of Directors shall meet at least [quarterly] in
accordance with an agreed upon schedule . . . ." *Id.* ¶ 92.

[15] Petras attaches both employment agreements to his Amended Complaint as exhibits. *See
id.* Ex C, D.

[16] Prior to filing his lawsuit, Petras alleges that he "provided to the United States a Disclosure
Statement which was based upon [his] direct and independent knowledge." *Id.* ¶ 7.

arguments, seeking to clarify its position on the law, i.e., the 2009 amendments to the FCA, but taking no position on the merits of Plaintiff/Relator's Amended Complaint, or the motions.

**II.       Standard of Review**

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 (2007), the Supreme Court clarified the Rule 12(b)(6) standard: the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 555. As the Third Circuit has stated, "[t]he Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating ... [a] claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips,* 515 F.3d at 234 (quoting *Twombly*, 127 U.S. at 555); *see also Covington v. Int'l Ass'n of Approved Basketball Officials,* 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citations omitted)).

In affirming that *Twombly*'s standards apply to all motions to dismiss, the Supreme Court explained several principles. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Second, "only a complaint that states a plausible claim for relief survives a motion to

dismiss." *Id.* at 679. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. U PMC Shadyside,* 578 F.3d 203, 211 (3d Cir. 2009). However, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings ... [although a] limited exception exists for documents that are integral to or explicitly relied upon in the complaint." *W. Penn Allegheny Health Sys., Inc. v. UPMC,* 627 F.3d 85, 97 n.6 (3d Cir. 2010) *cert. denied,* 132 S.Ct. 98 (2011) (citation and internal quotation marks omitted).

The Third Circuit has reiterated that "judging the sufficiency of a pleading is a context dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." *West Penn Allegheny Health System, Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010). This means that, "[f]or example, it generally takes fewer factual allegations to state a claim for simple battery than to state a claim for antitrust conspiracy." *Id.* That said, the Rule 8 pleading standard is to be applied "with the same level of rigor in all civil actions." *Id.* (citations and quotations omitted); *see also Covington v. International Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to 'set out in detail the facts upon which he bases his claim.' . . . The pleading standard 'is not akin to a 'probability requirement,' . . . to survive a motion to dismiss, a complaint merely has to state a 'plausible claim for relief.'") (internal citations omitted).

"Independent of the standard applicable to Rule 12(b)(6) motions," Rule 9(b) of the Federal Rules of Civil Procedure requires a heightened pleading standard for claims sounding in fraud or mistake. *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.,* 311 F.3d 198, 216 (3d Cir. 2002); *see*

*also* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). The Third Circuit has adopted a flexible approach to evaluating whether a plaintiff's fraud claim meets Rule 9(b)'s heightened pleading standard. *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984) ("Rule 9(b) requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud.... It is certainly true that allegations of 'date, place or time' [suffice], but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud."); *see also Frederico,* 507 F.3d at 200 ("Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which it is charged.'" (quoting *Lum v. Bank of America,* 361 F.3d 217, 223–24 (3d Cir. 2004) (abrogated in part on other grounds by *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544).

### III.   Analysis

#### a.   *Simparel, Roth, and Grilli's Motion to Dismiss*

Simparel defendants filed a joint motion to dismiss, arguing that (1) Plaintiff/Relator fails to satisfy the elements of a reverse false claim under Section 3729(a)(1)(G) and such a claim cannot be premised on a breach of contract or a breach of fiduciary duty; (2) Plaintiff/Relator's Section 3729(a)(1)(C) cause of action is not pled with particularity; and (3) Plaintiff/Relator's whistleblower claims fail because Plaintiff/Relator did not put Defendants on notice of his intent to investigate an FCA case, his FCA claims are not viable, and Roth and Grilli were neither employers nor *de facto* employers of Simparel.

#### i.   *"Reverse" False Act Claim – False Statement or Record*

9

"The primary purpose of the FCA 'is to indemnify the government—through its restitutionary penalty provisions—against losses caused by a defendant's fraud.'" *United States ex rel. Wilkins v. United Health Grp.*, 659 F.3d 295, 305 (3d Cir. 2011). The FCA was substantially amended through the Fraud Enforcement Recovery Act of 2009 ("FERA"). Pub.L. No. 111–21, 123 Stat. 1617 (2009). The FERA amendments were enacted on May 20, 2009, and generally apply to conduct arising after that date. FERA § 4(f), 31 U.S.C. 3729 note. Because Plaintiff/Relator solely complains of conduct post-dating the FERA, *see generally* Am. Compl, I will analyze his claims entirely under the revised FCA.

Section 3729(a)(1)(G) imposes liability on any person who

knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.[17]

31 U.S.C. § 3729(a)(1)(G).

First, Simparel defendants argue that "there is no allegation of a knowingly false record or statement made to the Government." Simparel Def.'s Br. at 17. However, a plain reading of Section 3729(a)(1)(G) does not impose a requirement that a defendant either make a knowingly false record or statement or present one to the Government. The second clause of Section 3729(a)(1)(G) merely declares it unlawful to "knowingly conceal[] or knowingly and improperly

---

[17] As the Department of Justice explains, "Section 3729(a)(1)(G) is known as the reverse false claims section; it provides liability where one acts improperly – not to get money from the government, but to avoid having to pay money to the government." *The False Claims Act: A Primer*, U.S. DEPT. OF JUSTICE, http://www.justice.gov/sites/default/files/civil/legacy/2011/04/22/C-FRAUDS_FCA_Primer.pdf (last accessed Jan. 21, 2015).

Section 3729(a)(1)(G) is adapted from Section 3729(a)(7) of the FCA—Section 3729 was reformatted and expanded under the 2009 amendments to the statute. *See United States ex rel. Lusby v. Rolls–Royce Corp.*, 570 F.3d 849, 855 n. * (7th Cir. 2009)

avoid[] or decrease[] an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G); *see also United States ex rel. Stone v. OmniCare, Inc.*, Civ. No. 09-c-4319, 2011 WL 2669659, at *12 (N.D. Ill. July 7, 2011); *Scott v. E.I. du Pont de Nemours & Co.*, Civ. No. 13-741, 2014 U.S. Dist. Lexis 58958, at *6-7 (M.D. La. Apr. 29, 2014).[18]

Simparel defendants' main case cited in support of their proposition is *U.S. ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 835 (7th Cir. 2011), which states that "[u]nder the False Claims Act, a 'reverse false claim' is a false statement used not to obtain payments from the government, but to 'conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government.'" However, the Seventh Circuit expressly notes in that case that "[t]he 2009 amendments to the False Claims Act make it unlawful to 'knowingly conceal or knowingly and improperly avoid or decrease an obligation to pay or transmit money or property to the Government,' *apparently regardless of whether such actions involve a falsehood*." *Id.* at 835 n.16 (emphasis added) (internal citation omitted). The Seventh Circuit did not apply the 2009 amendments to the FCA in *Yannacopoulos* because in that case, all of the alleged conduct occurred before May 20, 2009, the date of the amendments' enactment. *Id.* Because the revised version of the FCA encompasses conduct that does not have to include a false statement or presentment to the Government, Simparel defendants' first argument is unavailing.

ii. *"Reverse" False Claims Act - Obligation*

Next, Simparel defendants contend that Plaintiff/Relator has not sufficiently pled that their actions implicated an "obligation to pay or transmit money or property to the Government,"

---

[18] The first prong also allows for liability where a defendant does not present a knowingly false statement or record to the Government as long as the defendant "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government." *See, e.g.*, *United States v. Bourseau*, 531 F.3d 1159, 1169 (9th Cir. 2008) ("Presentment is not an element in a cause of action under § 3729(a)(7).").

necessary to find liability under either clause in Section 3729(a)(1)(G). *See* 31 U.S.C. 3729(a)(1)(G). The FCA defines obligation as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." 31 U.S.C. 3729(b)(3).

Simparel defendants first argue that they had no present legal obligation to pay money to the Government as a shareholder and thus their conduct cannot form the basis for a violation of Section 3729(a)(1)(G). Further, Simparel defendants argue that the FCA does not recognize contingent or future obligations. Finally, Simparel defendants argue that the SBA, as a governmental entity, is not a shareholder of Simparel—rather, the court-appointed receiver of L Capital's assets, "SBA-Receiver," is Simparel's shareholder, and thus Simparel defendants do not have any specific obligations to the Government in the context of Simparel's relationship to its shareholders. In support of their latter position, Simparel defendants cite to SBA's standard operating procedures regarding SBIC liquidation, which are publicly available and attached as an exhibit to Simparel defendants' motion to dismiss.[19] *SBIC Liquidation*, SOP 10 07 1, Small Business Administration, https://www.sba.gov/sites/default/files/sops/serv_tools_sops_1007_1.pdf (last accessed Jan. 23, 2015). Finally, Simparel defendants argue

---

[19] According to SBA's standard operating procedures regarding SBIC liquidation, "[a]fter SBA is appointed as Receiver (SBA-Receiver), SBA is a fiduciary, responsible to the court and to all creditors, including SBA-Creditor, and parties in the interest of the proper operation and/or liquidation of the debtor. The Receiver is a separate legal entity and, as such, its funds, records, claims, assets, and liabilities are not the funds, records, claims, assets, and liabilities of SBA or the Government. SBA-Receiver's decisions must be made for the benefit of the entire Receivership estate. In liquidating the assets of the estate, SBA-Receiver is bound by the orders of the appointing court, Federal receivership and other statutes, court rules, applicable state laws, etc., rather than the regulations of SBA." *Id.*

that claims of breach of fiduciary duty or a breach of contract are insufficient to pass as a federal False Claims Act case.

Plaintiff/Relator, on the other hand, argues that the revised FCA does recognize contingent or future obligations under Section 3729(a)(1)(G), that the SBA standard operating procedures are outside the scope of the complaint and should not be considered in Simparel defendants' motion to dismiss, and that Simparel had an obligation to pay or transmit money or property to L Capital in the form of accrued dividends "contingent upon 1) a declaration by [Simparel's] Board . . . that such dividends would be paid or 2) any involuntary or voluntary liquidation, dissolution, or windup of Simparel." Pl.'s Opp. Br. at 13. According to Plaintiff/Relator, that obligation was improperly avoided or decreased by Simparel defendants' concealment or withholding of financial and accounting documentation from the SBA and by Roth, Grilli, and MontERP's wrongful diversion of clients and assets to Log Logistics.

In Plaintiff/Relator's Amended Complaint, Plaintiff/Relator alleges various obligations incurred by Simparel defendants in two different sections. First, in a section titled "Introduction," Plaintiff/Relator alleges that Simparel had an obligation to keep the Simparel board informed of all material matters, maintain a duty of loyalty by not conspiring to solicit customers and company employees through other entities, not use trade secrets to compete against the company, and not participate in an unauthorized vertical business to Simparel's detriment. Am. Compl. ¶ 4. Later, in a section titled "The Defendant's [*sic*] Obligation to the United States," Plaintiff/Relator alleges that (1) Roth and Grilli had an obligation to inform Simparel's board of Roth's intent to pursue a vertical business, to act as "a prudent business man," and to refrain from soliciting Simparel customers and employees, using trade secrets, and competing "using an unauthorized vertical business"'; and (2) Simparel officers and board members had an obligation to share all

financial information with the SBA and refrain from revealing trade secrets. *Id.* ¶¶ 101-104. None of the obligations Plaintiff/Relator identifies in his complaint require payment of money or property to the Government.

Even assuming that the 2009 amendments to the FCA now include contingent or future obligations as the basis for liability under Section 3729(a)(1)(G)[20] and that the Court may not consider the SBA's standard operating procedures suggesting that L Capital's receiver is an entity with claims separate from those of the Government,[21] the Court nonetheless finds that

---

[20] The Government's Statement of Interest asserts that the revised FCA reaches contingent obligations. In support of its position, the Government points to the language in the provision, which states that the term "means an established duty, *whether or not fixed*," 31 U.S.C. 3729(b)(3) (emphasis added), and the 2009 FCA amendments' legislative history. *See* S. Rep. No. 111-10, at 14 (2009) ("[W]hile the new definition of 'obligation' expressly includes contingent, non-fixed obligations, the Committee supports the position of the Department of Justice that current section 3729(a)(7) [now Section 3729(a)(1)(G) 'speaks of 'an obligation,' not a 'fixed obligation' . . . . the Committee's view . . . [is] that an 'obligation' arises from the spectrum of possibilities from the fixed amount debt obligation where all particulars are defined to the instance where there is a relationship between the Government and a person that 'results in a duty to pay the Government money, whether or not the amount owed is yet fixed."). The FCA's legislative history is persuasive, though the Court notes that none of the parties cite to, and the Court is unable to find, case law that confirms the Government's position. *Cf. U.S. ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 36 ITRD 697 (E.D. Pa. 2014) (noting that the extent to which the 2009 FCA amendments expand the scope of an obligation in the customs context "is apparently a novel question").

[21] Whether the Court may properly consider the SBA operating procedures offered as evidence by Simparel defendants depends on whether they are integral to, or relied upon, Plaintiff/Relator's claims. *Stratechuk v. Bd. of Educ.*, 200 F. App'x 91, 94 (3d Cir. 2006) ("Under certain circumstances . . . it is permissible for a court to consider matters of 'public record' in ruling on a motion to dismiss. A prerequisite to consideration of an admittedly authentic public document as a part of a motion to dismiss is that the plaintiff's claim relies on that document."); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (holding that a district court may only use a *"document integral to or explicitly relied* upon in the complaint*"* without converting a motion to dismiss into a motion for summary judgment). The operating procedures have not been relied upon in the Amended Complaint, though the documents appear integral to the question of whether Plaintiff/Relator is suing on behalf of the Government. Even if the Court were to consider the documents on that theory, however, the documents do not appear to definitively rule out the possibility that Plaintiff/Relator may sue to recover money or property eventually owed to the Government through the receiver; Simparel defendants do not foreclose that possibility by submitting case law or other support

14

Plaintiff/Relator has not adequately pled that Simparel defendants had an obligation to pay or transmit property to the Government that they allegedly improperly avoided or sought to decrease.[22]  The obligations Plaintiff/Relator identifies in his Amended Complaint are clearly outside the scope of the FCA's definition of an obligation—none of them involve any payments to the Government, and thus, do not potentially give rise to a Section 3729(a)(1)(G) violation. *See, e.g.*, *U.S. ex rel. Vigil v. Nelnet, Inc.*, 639 F.3d 791, 801 (8th Cir. 2011) (dismissing an asserted violation of the FCA's reverse false claims provision "that fails to allege a specific obligation to the Government that could be the basis for [such] a claim.").

Further, Plaintiff/Relator's attempt to amend his complaint through his opposition brief by newly alleging that Simparel had an obligation to pay accrued dividends to L Capital is impermissible. "It is axiomatic that the complaint may not be amended by the briefs in

---

demonstrating that a plaintiff/relator may not bring an FCA claim to recover the Government's money owed through a receivership.

In any event, I need not decide whether this evidence may be considered because I find dismissal appropriate due to Plaintiff/Relator's failure to allege an obligation owed to the Government.

[22] Simparel defendants' arguments that "dressed-up" breach of contract or breach of fiduciary claims cannot form the basis of FCA liability and that Simparel defendants did not owe or breach any fiduciary duties are tangential because they do not specifically relate to the ultimate issue here of whether Plaintiff has pled the elements of a reverse FCA claim under the Section 3729(a)(1)(G)'s second prong: (1) an obligation to pay or transmit money or property to the Government and (2) knowing concealment or knowing and improper avoidance or reduction of that obligation. *See* 31 U.S.C. 3729(a)(1)(G). Indeed, courts around the country have regularly recognized that the knowing breach of a contract to avoid or decrease or that is material to an obligation to pay money or property to the Government can give rise to an FCA claim. *See, e.g.*, *United States v. Yannacopoulos v. Gen Dynamics*, 652 F.3d 818 (7th Cir. 2011); *see also United States ex. rel. Landis v. Tailwind Sports Corp.*, --- F.Supp. 3d. ---, Civ. No. 10-cv-00976, 2014 WL 2772907 at *31-32 (D.D.C. June 19, 2014).

Here, Plaintiff/Relator's Section 3729(a)(1)(G) claim fails not because Plaintiff/Relator insufficiently alleged that Simparel defendants owed and breached fiduciary and contractual duties—but rather because Plaintiff/Relator fails in his Amended Complaint to identify an obligation to pay or transmit money or property to the Government that Simparel defendants knowingly concealed, avoided, or decreased.

opposition to a motion to dismiss." *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007). While the Investor's Rights Agreement outlining the distribution of accrued dividends is attached to Plaintiff/Relator's Amended Complaint, Plaintiff/Relator did not allege that Simparel had an obligation to pay accrued dividends to L Capital, nor that any defendant's conduct either knowingly made, used, or caused to be made or used, a false record or statement material to that obligation or knowingly concealed or knowingly and improperly avoided or decreased that obligation. *See generally* Am. Compl. Therefore, Plaintiff/Relator's Section 3729(a)(1)(G) claim in Count One against Simparel defendants is dismissed without prejudice.

### iii. Conspiracy Claim

Next, Simparel defendants contend that Plaintiff's Section 3729(a)(1)(C), or conspiracy claim, is not pled with particularity. Section 3729(a)(1)(C) attaches liability to any person who "conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G)" of that section. Plaintiff/Relator's Amended Complaint appears to assert that Defendants "conspire[d] to defraud the United States by knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money or property to the [G]overnment." Am. Comp. at 108; it follows that Plaintiff/Relator alleges a conspiracy to violate Section 3279(a)(1)(G). *See* 31 U.S.C. 3729(a)(1)(G).

Simparel defendants argue that Plaintiff/Relator fails to identify any defendants allegedly involved in the conspiracy or any "meeting of the minds between any [d]efendants to avoid or decrease a payment obligation or any act in furtherance of a conspiracy as required." Simparel Def.'s Br. at 29.

Plaintiff/Relator disputes this argument, arguing that he merely needs to provide "notice, pursuant to Rule 9(b), of the existence of an unlawful agreement between defendants to violate

the FCA, and . . . at least one act performed in furtherance of that agreement." [23] Pl.'s Opp. Br. at 20. Plaintiff/Relator claims that he has satisfied this requirement and points to the following allegations in his Amended Complaint: (1) Log Logistics was providing services to Cometrics for a quarterly maintenance fee believed to have begun in October 2011, but Log Logistics paid no fee to Simparel and Log Logistics employees were given "unfettered access to [Simparel's] trade secrets," (2) MontERP, which was formed in August 2011 to assist in the development of Simparel's ERP software, hired two employees who had previously worked for Ballin and did not sign proprietary agreements, therefore retaining extensive access to Simparel's software technology trade secrets, and (3) current MontERP directors Roth and Ron Cacchione, and former director Grilli, "used [MontERP] services . . . to divert technology and assist [sic] away from Simparel." Am. Compl. ¶¶ 20-21.

Here, the Court has already dismissed Plaintiff/Relator's Section 3729(a)(1)(G) claim. Therefore, Plaintiff/Relator's Section 3729(a)(1)(C) conspiracy claim, premised on conspiracy to violate Section 3729(a)(1)(G), must also be dismissed. *See Feingold v. Graff*, 516 F. App'x 223, 227 (3d Cir. 2013) ("An action for civil conspiracy may only be maintained if the substantive claims of unlawful conduct which underlie the conspiracy claim survive; dismissal or summary judgment of the underlying claims results in dismissal or summary judgment of the civil conspiracy claim."); *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 446 (3d Cir. 2000); *Brown ex rel. Estate of Brown v. Philip Morris Inc.*, 228 F.Supp.2d 506, 517 n.10 (D.N.J. 2002) ("Civil conspiracy is not an independent cause of action, and conspiracy liability depends on the presence of an underlying finding of . . . liability . . . . The dismissal of plaintiff's other causes of action demands the dismissal of her conspiracy claim.");.*see also Pencheng Si v.*

---

[23] Plaintiff/Relator appears to only assert his conspiracy claim against Roth, Grilli, MontERP, and Log Logistics—not against Simparel. Pl.'s Opp. Br. at 20.

*Laogai Research Found.*, --- F.Supp. 3d. ---, No. 09-CV-2388 (KBJ), 2014 WL 5446487, at *16 (D.D.C. Oct. 14, 2014) ("This [FCA conspiracy] count can be disposed of in short order for one simple reason: there can be no conspiracy to commit fraud in violation of the FCA if an underlying false claim has not been adequately alleged.").[24]  Therefore, Plaintiff/Relator's Section 3729(a)(1)(C) claim against Simparel defendants is dismissed.

*iv.  Whistleblower Claims*

Finally, Simparel defendants argue that Plaintiff/Relator's Section 3730(h) whistleblower claims against Simparel defendants must be dismissed because Plaintiff/Relator does not allege that he put Simparel defendants on notice that he intended to explore an FCA claim against them. Further, Simparel defendants argue that Plaintiff's whistleblower allegations fail because he cannot establish that his conduct could have led to a viable FCA violation.

Section 3730(h) states,

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. 3730(h). "A plaintiff asserting a cause of action under § 3730(h) must show (1) he engaged in 'protected conduct,' (i.e., acts done in furtherance of an action under § 3730) and (2)

---

[24] Even if Plaintiff/Relator's Section 3729(a)(1)(G) claim were to survive, Plaintiff/Relator's allegations would not survive Rule 9(b)'s heightened pleading standard. Other than identifying the actors and a generally defined purpose, Plaintiff/Relator does not inject any measure of precision into his conspiracy claim, such as when the conspiracy began, the existence of an agreement, or how the conspiracy was carried out. *See In re Rockefeller Ctr. Props. Secs. Litig.,* 311 F.3d 198, 216 (3d Cir. 2002); *see also Animal Sci. Products, Inc. v. China Nat. Metals & Minerals Imp. & Exp. Corp.*, 596 F. Supp. 2d 842, 878 (D.N.J. 2008).

18

that he was discriminated against because of his 'protected conduct.'" [25] *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 186 (3d Cir. 2001). "A successful cause of action under S 3730 requires an employee to prove that he engaged in "protected conduct," that is conduct in furtherance of a False Claims Act suit, and that his employer was on notice of the "distinct possibility" of False Claims Act litigation and retaliated against him because of his "protected conduct." *Id.*

Simparel defendants argue that Plaintiff/Relator's Amended Complaint is bereft of allegations that Simparel defendants were on notice of the possibility of Plaintiff/Relator filing an FCA lawsuit. Further, Simparel defendants argue that Plaintiff/Relator's conduct was not in furtherance of viable FCA litigation, "and thus receives no protection under Section 3730(h)." Simparel Defs.' Br. at 38.

Parsing Plaintiff/Relator's Amended Complaint confirms Simparel defendants' position that Plaintiff/Relator does not allege, and the Court cannot infer, that Simparel defendants were

---

[25] The pre-amended version of Section 3730(h) read,

Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiating of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

*Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 185 (3d Cir. 2001) (quoting 31 U.S.C. 3730(h) (2006)). The amended version of Section 3730(h) appears to merely simplify the language regarding the protected activity under the provision and take out language limiting liability to retaliatory acts taken by an employer. Therefore, the Court will continue to use pre-2009 case law regarding the notice requirement under Section 3730(h). *See, e.g.*, *Hutchins*, 253 F.3d at 185. Further, both Simparel defendants and Plaintiff/Relator cite to case law applying pre-2009 FCA whistleblower law in their arguments on this issue. *See* Simparel Defs.' Br., Pl.'s Opp. Br.

on notice regarding any potential protected activity under Section 3730(h) in which Plaintiff/Relator engaged.[26] Plaintiff/Relator points the Court to his allegation in Paragraph 111 that because he "report[ed] his discovery and knowledge of the fraudulent acts set forth herein to the SBA appointed agent Gerry Poirer-McClure of Equity Growth Partners, Simparel violated section 31 USC [§] 3730[h] by retaliating against Relator by terminating [his] employment." Am. Compl. 111. Plaintiff/Relator alleges that the Court can infer from this statement that Simparel defendants received notice of Plaintiff/Relator's conduct because "[l]ogic and common sense dictate that Roth and Grilli must have known that Relator met with Porer-McLure if the Complaint alleges that he was terminated for the same." Pl.'s Opp. Br. at 26. However, logic and common sense do not necessarily dictate such a result—Poirer-McClure is not a Simparel employee and the Court cannot assume, without more, that Poirer-McClure conveyed whatever he was told to Simparel defendants. Without an alleged causal connection between Plaintiff/Relator's allegedly protected activity and Plaintiff/Relator's termination, the Court cannot conclude that Plaintiff/Relator was terminated "because of" any protected activity in which he engaged under Section 3730(h). *See, e.g.*, *Quint v. Thar Process, Inc.*, No. CIV.A. 11-116, 2011 WL 4345925, at *15 (W.D. Pa. Sept. 15, 2011) (dismissing a Section 3730(h) claim where plaintiff did "not allege that he told anyone at [the defendant company] he was investigating the reports for evidence of possible fraud, nor does he allege that he advised anyone

---

[26] Plaintiff/Relator argues that, "contrary to the claims of the Defendants, the pleading standard here in the Third Circuit for employment related retaliation claims is the 'fair notice' requirement pursuant to Rule 8(a)." Pl.'s Opp. Br. at 21. Nowhere in their brief do Simparel defendants argue that Plaintiff/Relator's Section 3730(h) claims should be evaluated under Rule 9(b)'s heightened pleading standards. *See* Simparel Defs.' Br. 34-41. The Court applies Rule 8(a)'s pleading standard here and finds that Plaintiff's Section 3730(h) claims fail to meet this standard.

in [company] management he was intending to complain to those agencies about the company's purportedly fraudulent claims.").

Plaintiff/Relator's additional scattered allegations in his Amended Complaint that he raised concerns about Simparel's billing practices, contract with MontERP, and about Roth proceeding with forming Log Logistics without first informing Simparel's board are similarly insufficient to infer that Plaintiff/Relator put Simparel defendants on notice of his intention to pursue a potential FCA claim against them. *See, e.g.*, *Sefen ex rel. U.S. v. Animas Corp.*, No. CIV.A. 10-2971, 2014 WL 2710957, at *8 (E.D. Pa. June 13, 2014) ("In 'expressing concern' to team-members and supervisors about Defendants' documentation and systems, Plaintiff never used terms like 'illegal,' 'unlawful,' or 'qui tam action,' and never informed anyone at [the defendant companies] that he intended to contact the Government about false claims.").[27]

Next, Simparel defendants argue that because Plaintiff/Relator's conduct was not in furtherance of a viable FCA claim, his activity cannot be considered protected under Section 3730(h). To be covered by the False Claims Act, there must "at least be a distinct possibility that a viable FCA action could be filed." *Dookeran v. Mercy Hosp. of Pittsburgh*, 281 F.3d 105, 108 (3d Cir. 2002). In *Dookeran*, the Third Circuit found that the plaintiff's claim was not viable on summary judgment because no "claim" had, or could have, been made on the Government. *Id.*

Here, because the Court dismisses Plaintiff/Relator's Section 3729(a)(1)(G) claim without prejudice, the Court is unwilling to state at this time that Platintiff/Relator's conduct was unprotected because he could not have presented a viable FCA claim. Accordingly, the Court will not dismiss Plaintiff/Relator's Section 3730(h) claim on this basis. In any event, it is sufficient for the Court to dismiss Plaintiff/Relator's Section 3730(h) claim on the basis of failure

---

[27] Notably, beyond a general recitation of Section 3730(h) and Rule 8's pleading standards, Plaintiff/Relator cites to no specific case law supporting his position. *See* Pl.'s Opp. Br. 21-26.

to allege that Simparel defendants were on notice regarding any potential protected activity under Section 3730(h) in which Plaintiff/Relator engaged.

### 1. Against Roth and Grilli

Finally, Simparel defendants argue that Plaintiff/Relator's Section 3730(h) claims against Roth and Grilli must be dismissed for the additional reason that neither Roth nor Grilli were Plaintiff/Relator's employers or can be considered "de facto employers" for the purposes of Section 3730(h). Plaintiff/Relator did not respond to this argument in his opposition, though he continued to assert his whistleblower claims against "Defendants." Pl.'s Opp. Br. 21.

The 2009 amendments to the FCA have deleted the word "employer" from Section 3730(h). Now, "[a]ny employee. . . shall be entitled to all relief necessary to make that employee . . .whole, if that employee . . . is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of an action under this section." 31 U.S.C. 3730(h).

Plaintiff/Relator asserts that "Roth . . . and . . . Grilli, so dominated and controlled the actions of Simparel in the discharge, retaliation[,] and harassment of Relator in the terms of conditions of his employment because of lawful acts as described therein, that [they] acted as . . . "de facto" employer[s] for purposes of Section 3730(h)." Am. Compl. at 113. In support of this statement, Plaintiff cites to *Palladino ex rel. U.S. v. VNA of S. New Jersey, Inc.*, 68 F. Supp. 2d 455, 464 (D.N.J. 1999) and *Mruz v. Caring, Inc.*, 991 F.Supp. 701 (D.N.J. 1998), cases which contemplate extending Section 3730(h) liability to "de facto employers" who so dominate and control the actions of the company to which they belong so as to exert control over the employment process. However, the notion of a "de facto employer" has not been widely adopted by other courts and

has certainly not been endorsed by the Third Circuit. *See, e.g.*, *Wichansky v. Zowine*, No. CV-13-01208-PHX-DGC, 2014 WL 5594086, at *4 (D. Ariz. Nov. 4, 2014) (collecting cases).

Further, even with the adoption of revised Section 3730(h), many courts have continued to require that the retaliatory conduct in question be performed by an "employer entity" for a cause of action to lie under the revised Section 3730(h). *See, e.g.*, *U.S. ex rel. Black v. Am. Soc'y for Eng'g Educ.*, No. CIV.A. 12-1139, 2014 WL 1765337, at *5 (E.D. Pa. May 2, 2014) ("Since 2009, courts have split on whether § 3730(h) imposes liability for individual supervisors, in addition to employer entities, for retaliation claims under the FCA. The majority of courts have held that this provision does not create liability for individual supervisors under the FCA, but rather creates liability only for the employer entity. While the Third Circuit has not addressed this issue, courts in the Second Circuit have held that only employers, and not individual supervisors, may be liable under the FCA.") (collecting cases). This Court declines to find that Roth and Grilli were "de facto employers" for the purposes of Section 3730(h) liability. Further, even if the Court did find them to be de facto employers, Plaintiff/Relator's inadequacy in pleading protected activity or that Simparel defendants had notice that Plaintiff had engaged in protected activity and therefore terminated him because of that activity still precludes Plaintiff/Relator from stating a claim under Section 3730(h). Therefore, Plaintiff's Section 3730(h) claims, asserted in Counts Three, Four, and Five of his Amended Complaint, are dismissed.

### b. *Non-Simparel Defendants' Motion to Dismiss*

Next, the Court considers non-Simparel defendants' motion to dismiss. In his Amended Complaint, Plaintiff/Relator appears to present two claims against non-Simparel defendants: (1) in Count One, a violation of Section 3729(a)(1)(G), and (2) in Count Two, a violation of Section

3729(a)(1)(C). Am. Compl. 106-108. In non-Simparel defendants' motion to dismiss, the two defendants move to dismiss on both of these counts. However, in his opposition, in a footnote, Plaintiff/Relator "acknowledges that defendants Log Logistics and MontERP have no liability under Count 1 . . . and withdraws that count against these defendants." Pl.'s Opp. At 13 n.1. Therefore, the Court dismisses Count One against non-Simparel defendants on this basis. Therefore, Plaintiff/Relator is proceeding solely on his conspiracy claim.

In the first instance, non-Simparel defendants assert that this Court lacks personal jurisdiction over MontERP. Once challenged, a plaintiff bears the burden of establishing personal jurisdiction. *General Elec. Co. v. Deutz AG,* 270 F.3d 144, 150 (3d Cir. 2001) (finding the plaintiff must demonstrate "[a] nexus between the defendant, the forum and the litigation."). However, given that this Court did not hold an evidentiary hearing, Plaintiff need only establish a prima facie case of personal jurisdiction. *Tocci v. Antioch University,* No. 07–1341, 2007 WL 2362592, at *2 (D.N.J., August 15, 2007) (citing *Miller Yacht Sales, Inc. v. Smit,* 384 F.3d 93, 97 (3d Cir. 2004). Accordingly, in considering Defendant's Motion, this Court takes Plaintiff's allegations as true and resolves all factual disputes in Plaintiff's favor. *Miller,* 384 F.3d at 97.

The False Claims Act provides that "any action under section 3730 may be brought in any judicial district in which the defendant, or in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred." 31 U.S.C. § 3732. The Third Circuit has held that when a statute provides for nationwide service of process, "the relevant forum for analyzing the extent of the defendant's contacts is the United States as a whole." *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 369 (3d Cir. 2002).

MontERP contests Plaintiff/Relator's bare allegation that MontERP "does business in the United States and conduct conducts [sic] with Simparel." Am. Compl. ¶ 47, by submitting the declaration of Ron Cacchione ("Cacchione"), the sole shareholder of MontERP. Cacchione Decl. In this Declaration, Cacchione describes MontERP's contacts with the United States as "virtually non-existent." Specifically, Cacchione swears that MontERP hired Canadian employees, *id.* ¶ 6; had no offices in the United States, *id.* ¶ 7; had no bank accounts in the United States, *id.* at ¶ 8; only had one United States contract, *id.* ¶ 9; and that MontERP's employees only made five temporary visits to the United States, for purposes relating to its Simparel contract, *id.* ¶¶ 18-26. Based upon Cacchione's affidavit, the Court finds that MontERP's contacts with the United States are too minimal to support jurisdiction here.

Further, in its opposition, Plaintiff merely restates his Amended Complaint's allegations regarding MontERP, and asserts, without support, that MontERP does daily business with Simparel and that Simparel was MontERP's only client. *See* Pl.'s Br. in Opp to non-Simparel Defs.' Mot. to Dismiss. A plaintiff must do more than make bare, unsupported allegations in response to evidence set forth by a defendant disputing personal jurisdiction. *See Morris v. Wells Fargo Bank, N.A.*, No. 1:12-CV-01909 CCC, 2013 WL 4081701, at *3 (D.N.J. Aug. 8, 2013) *report and recommendation adopted,* No. 12-CV-1909 CCC-JAD, 2013 WL 4509973 (D.N.J. Aug. 23, 2013) ("[A] plaintiff may not rely on the bare pleadings alone in order to withstand a motion to dismiss for lack of personal jurisdiction; once the motion is made, plaintiff must respond with actual proofs, not mere allegations.") (quotation marks omitted) (citing to *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir. 1990)); *see also In re Bulk (Extruded) Graphite Products Antitrust Litig.*, No. CIV. 02-6030 (WHW), 2006 WL 1084093, at *6 (D.N.J. Apr. 24, 2006) (noting the necessity of "affirmative proof" to withstand a motion to dismiss for

lack of personal jurisdiction). Therefore, the Court finds that Plaintiff/Relator has not met his burden to prove that this Court has personal jurisdiction over MontERP and accordingly dismisses MontERP as a defendant on this basis.

Further, as I stated *supra*, a FCA conspiracy claim will not lie once the underlying claim has been dismissed. *See Born v. Iannacone*, No. CIV.A. 97-5607, 1998 WL 692960, at *13 (E.D. Pa. Sept. 30, 1998) *opinion vacated in part on reconsideration on other grounds*, No. CIV.A. 97-5607, 1998 WL 855491 (E.D. Pa. Dec. 10, 1998); *Pencheng Si*, --- F.Supp. 3d ---, 2014 WL 5446487, at *10; *United States v. City of Houston*, No. CIV.A. H-03-03713, 2006 WL 2382327, at *9 (S.D. Tex. Aug. 16, 2006) *aff'd sub nom. U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333 (5th Cir. 2008); *cf. Allegheny*, 228 F.3d at 446. Therefore, Plaintiff/Relator's conspiracy claim against non-Simparel defendants must also be dismissed on this basis.[28]

### IV.    Conclusion

The Court dismisses Counts Two through Five of Plaintiff/Relator's Amended Complaint with prejudice. Count One is dismissed without prejudice against Simparel defendants and with prejudice against non-Simparel defendants. An appropriate order shall follow.


Date: January 26, 2015                                        /s/ Freda L. Wolfson
                                                                              Freda L. Wolfson, U.S.D.J.

---

[28]  Non-Simparel defendants do not raise this argument, instead concentrating on the substance of Plaintiff/Relator's conspiracy claim. *See* Non-Simparel Defs.' Reply Br. Even if the Court were to consider Plaintiff/Relator's conspiracy claim against non-Simparel defendants as a stand-alone claim, it would fail for the same reasons I discuss in *supra* note 24 regarding Plaintiff/Relator's conspiracy claim as asserted against Simparel defendants.